We'll hear argument first this morning in Case 09-9000, Skinner v. Switzer. Mr. Owen. Mr. Chief Justice, and may it please the Court, The issue before the Court today, and the only question litigated to decision in the courts below, is whether a prisoner's claim that seeks only access to evidence for DNA testing may be brought in Federal court under the Civil Rights Act. The Fifth Circuit summarily answered that question no, adhering to its longstanding view that any Federal claim that might conceivably set the stage for a subsequent collateral attack, however removed in time, must itself be brought via habeas. That rule so clearly cannot be squared with the decisions of this Court, especially since Wilkerson v. Dotson, that the Court should reverse and remand. I'd like to begin by describing the contours of the Heck rule. May I ask you about Wilkerson was a parole, parole eligibility, so it didn't touch the conviction or the sentence, where this one does, so cases are distinguishable on that basis. Justice Ginsburg, the reason that we argue our case does not touch the conviction is that the relief that we are seeking, access to the evidence for testing, if we won, if we win in district court and we get that access, it does not necessarily imply, which is the language this Court used in Heck and repeated in Dotson, that the conviction is lawfully invalid. Ginsburg, I understand that argument, but there is the distinction of the type of case where the one conviction and sentence were never going to be questioned, only parole eligibility were here. The discovery that you seek in 1983 is not a destination. The destination is the further litigation that may or may not arise. That's true, Your Honor. We don't see that as a distinction that compels the conclusion that Dotson isn't the model to follow, because in our view, what Dotson said, again, the prisoners, as Justice Ginsburg says, were before the Court seeking a declaration about the parole procedures that Ohio planned to use in their cases. Those parole procedures had been adopted after those prisoners were sent to prison and they complained that that was an ex post facto violation. And Ohio argued, both in the Sixth Circuit and in this Court, that the fact that these prisoners expected at some point to come back to court armed with a judgment in their favor and seek a reduction in their sentences was enough to conclude that the case should be within the core of habeas. Kennedy, It does seem odd, though, and I don't want to jump into your argument too much because you've got to plan out what you want to tell us. It does seem odd that if your suit for DNA testing is not an attack on the sentence, that you ask for a stay. I mean, if it's not an attack on the sentence, why shouldn't that factor into our decision not to grant a stay or to grant a stay? It's an irony in your position. I think it's an irony. I accept the Court's point that that seems unusual. But I think that the reason that the Court's cases, at least as to the relief that we're seeking and not the stay that the Court entered in order to hear this case and decide the question, that the relief we are seeking does not necessarily imply the legal invalidity of some of the defendants. Kennedy, Well, we don't grant a stay in order to decide a question. We grant a stay because there's a likelihood of success on the merits, and that goes to the sentence. And now you're telling us that your attack doesn't go on the sentence. I don't see why we don't just lift the stay under your own view of the case. No, Your Honor. I think if I was understood to say that, then let me clarify. I think that our success, when the Court applies the stay standard, it asks the question, what is the likelihood of success on the merits? Success on the merits, for purposes of our lawsuit, means getting access to the evidence. That's what it means. If that's all it means, we shouldn't have granted a stay. I don't think so, Your Honor, because I think once we had demonstrated that we were likely to prevail on the merits of the case, I think the Court was within, you know, appropriate judgment to make sure that the case didn't become moot by Mr. Skinner's execution, because I do think that the demonstration that we had to make was not about whether ultimately he might get relief from his conviction, but whether we had a chance of prevailing on the civil rights claim that asks for access to the evidence. But that disconnects the irreparable harm alleged with respect to the stay and your claim that you now set. You say now your claim is not going to necessarily affect the sentence. The irreparable harm, if I remember, was quite obviously the execution. But there's no irreparable harm from your failure to get access to the DNA evidence. Unless it's linked to the sentence. Your Honor, I guess I don't have a better answer than the one I gave Justice Kennedy, and that's that I think that the stay standard doesn't have to link those two things. I think that if the Court finds that Mr. Skinner is going to die before he can litigate his claim and it finds he has a reasonable chance of prevailing on that claim, that's sufficient to enter the stay. In the real world, a prisoner who wants access to DNA evidence is interested in overturning his conviction. Do you deny that? No, Your Honor. And isn't the emergence of the Rooker-Feldman argument in this case an illustration of the absurdities that pursuing the 1983 path produces, because habeas is not subject to claim preclusion, is it? No. It's not subject to Rooker-Feldman. No, it's not subject to those, Your Honor. But since you've squeezed this into 1983, now you have to deal with both of those issues. I think that the reason that the – I think the reason the Rooker-Feldman issue has arisen at this juncture in the case is that the pleadings in the district court were not permitted to, because of the sort of the fact that we were dismissed at a very early stage in the process, essentially on the threshold of the case. There was no opportunity to develop in full what the legal arguments are for both sides. Except that at page 18 of the yellow brief, where you did have time to explain your doctrine, you say a Federal constitutional issue arose only because the court of criminal appeals decision regarding the State law issue turned out to be so arbitrary and unreasonable as to deny Mr. Skinner's Federal due process rights. Correct me if I'm wrong, but I think I thought that's Rooker-Feldman to a tee. Correct me if I'm wrong. No, I think, Your Honor, that I don't agree about the Court's reading of Rooker-Feldman. If you think that, if the Court believes that, that would preclude it. And the reason is this. In the Feldman case itself, the plaintiffs in that case who were unsuccessful lawyers who are a law school graduate and an attorney who was borrowed outside the District of Columbia and were trying to get a waiver for a requirement for taking the borrower here in the District of Columbia, they filed a number of claims against the application of that rule by the District of Columbia court of appeals in their circumstances. But this Court said those claims can't proceed. Those claims challenge the application of the law to the facts. But this Court went on to say in Feldman, the last paragraph of the opinion says they have also raised other claims, and those claims are that this rule, as authoritatively construed by the District of Columbia court of appeals, is unconstitutional. It violates the Constitution. And the Court said in Feldman those claims may proceed. Sotomayor, as I read, I'm sorry. What's the rule that's arbitrary and capricious that you're challenging? Your Honor, the rule that we're challenging is that when the court of criminal appeals construed the fault provision of the Texas DNA testing statute in our case, it created a wholesale classification that said everybody who falls into Mr. Skinner's situation, who did not ask for testing at trial, is forever foreclosed from getting testing. Sotomayor, could you tell me how that's different than what Alaska did in the Osborne case, that we upheld their procedure? I thought that was one of the elements of the Alaska rule as well. If you had an opportunity to ask for it and gave it up, but you lost. So how are we getting to that here? And how are you going to get past Osborne here? Well, I think in Texas we have the difference, I think, Your Honor, is the difference between a substantive due process claim, as I understand it, and a procedural due process claim, that in Osborne the claim that was being made was that the State was denying a Federal right and denying access on that basis. Our argument is that the Texas statute was enacted to grant essentially protection to a class of inmates who were inmates who were wrongly convicted and can prove that with DNA evidence, and then interprets that statute in a way that needlessly chops a bunch of those inmates out, and that that's arbitrary, at least to the extent that it doesn't have reference to the specific facts of the case, the likelihood of innocence, the reasons for not doing the testing, and so on. Osborne expressly considered both procedural due process and substantive due process. But the reason, Your Honor, as I read Osborne, that it did not reach a decision on the procedure, or it didn't, that it rejected Osborne's procedural due process claim, was because he hadn't tried in State court. I mean, that was the premise of Osborne, was he has been, as I think the Court's language in Osborne was, if he hasn't tried those procedures, he's in no position to complain about them in Federal court. Whereas, we did try the procedures, and it's precisely that that is the basis for our claim in Federal court. If I, I'm sorry. Sotomayor, are you, one of the criticisms by your adversary of your proposal to bring these actions via 1983 is the prospect that the courts will be used to collaterally attack convictions by all sorts of due process allegations concerning discovery disputes. Could you address that point? And why, either you agree with them that that's what's going to happen, or if you don't, why not? I don't agree with them, Your Honor, and for a couple of reasons. First of all is that experience doesn't suggest that. The rule that we are asking the Court to adopt for the whole nation has been the rule for some time in six different circuits, and there's no evidence that in those circuits there have been a very large number of prisoners going into court under Section 1983 and trying to leverage discovery under the circumstances that are suggested by Respondent's brief. So that's the practical reason. As a legal, as a legal reason, I think, that our claim turns on the existence of the liberty interest in the State statute for DNA testing that Texas has created, and that there is no statute in Texas for other kinds of general discovery, for example, access to the prosecutor's file or police reports or other kinds of documents. That's not – there's no legal hook for that. Our legal hook is the existence of that DNA testing statute and the existence under State law of opportunities to bring claims of actual innocence after the evidence is tested. Roberts The critical formulation in Heck, necessarily implies, is a little difficult. I mean, the adverb points one way and the verb points the other. And how necessarily implies strikes me as a little less conclusive than you seem to think. I think if that word were in isolation, Your Honor, there might be more uncertainty about what implies means. But if the Court looks at the cases, looks at Prizer, looks at Heck, looks at Edwards, looks at Nelson, looks at Hill, what you'll see is the word necessarily is in all those cases. And, in fact, in Hill, I think, the Court – or maybe it was Nelson, one of the two Florida cases – the Court italicizes it twice in the same paragraph. Roberts Well, you read necessarily implies to mean conclusively establishes, right? Well, I'm not that strong, Your Honor. To finish the other answer I was going to say is that in other cases, I was just saying necessarily is everywhere. Necessarily is in all the cases. What the Court also implies is not in all the cases. In Dotson, for example, the Court uses the word demonstrate. Necessarily demonstrates that the judgment underlying the custody is invalid. So I think that there is certainly a difference. Roberts So you're asking for an expansion of Heck from necessarily implies to demonstrates?  No, Your Honor. I think that's what I'm saying. Roberts So if it implies doesn't mean the same as establish or demonstrate. Give me an example of a case where the 1983 claim would not establish innocence, but would still be covered by Heck. I think that – I think Edwards is an example of that, Your Honor, where in Edwards, the defendant, the prisoner, was suing in Federal court, alleging that, in his words, the procedures that were used to deny him, to deny him parole or convict him of disciplinary offenses, but the procedures that had resulted in the disadvantage he was complaining about were unconstitutional. But when you looked at his complaint, what he said was this – the reason those procedures are unconstitutional is because the decisionmaker was personally biased against me, which is less a complaint about the procedures and more a complaint I think about the merits of the – of that adjudication. And if you believe it, if you credit that and say, okay, we're going to find that's what happened, the adjudication was – was biased against you, that – that necessarily implies the invalidity of the judgment reached by that procedure. Roberts Necessarily implies or conclusively establishes? I think necessarily – with bias, perhaps that would be conclusively established, because I think there's no harmlessness test there. But I think that, at least in an adjudication, there wouldn't be. But I think that – I think necessarily implies is all that the Court needs to continue embracing in order to find that. Sotomayor What would you do with the Brady violation? Is that a necessarily implies or is that more akin to your claim? For a couple of reasons, Your Honor, it's not akin to our claim. First is this. Brady is a trial right. And I don't mean necessarily that it arises at trial, because sometimes it arises that the discovery that makes a Brady claim colorable discovery, you know, arises after trial. But Brady is a right to have certain evidence when you go to trial so that you can use it in an attempt to get the jury to find you not guilty. And therefore, if that right is violated, if you don't get that evidence and it's discovered later that you were denied this stuff that you needed to have a fair trial, that implies the invalidity of the trial judgment. The judgment that results in the custody. In our case, the judgment that we are challenging is the judgment of the court of criminal appeals denying us DNA testing, which does not in the same way demonstrate or necessarily imply that the custody judgment in our case is legally invalid. Kagan Mr. Roland, could I take you back to Roker-Feldman with that as the premise? You said that what you're attacking is the judgment. I read your complaint as having an important strand where you were not attacking the judicial judgment, but instead were attacking actions of the prosecutor's office independent of any judgment of the State courts. Are you abandoning that part of your complaint or are you continuing to maintain it? Because certainly, if you talk about the judgment alone, it at least gets you into Roker-Feldman territory, whereas if you talk about the prosecutor, it does not. Roland I think, Your Honor, that we are in the territory of talking about the judgment. And I think for the reasons I've described earlier, that that does not lead inexorably to a Roker-Feldman bar. But I think that the nature of our claim, which follows from Osborne, what we understood the court to be recognizing in Osborne or acknowledging in Osborne, is that the State's administration of its DNA testing scheme is where a due process violation might theoretically arise, depending on how it's administered. So I think we are Scalia I don't understand the argument you're making. Are you challenging the constitutionality of the Texas statute? As interpreted in our case, or as construed, I think, is the right, is the better word. Well, as construed, I mean, it's their statute. I mean, you say somewhere in your brief that they gave it an arbitrary and capricious interpretation. It's up to them how they want to interpret it. We don't reinterpret State statutes because the State supreme court interpreted it strangely. It seems to me you're either challenging the statute or you don't belong here. I think, Your Honor, we are challenging the statute. I mean, I think once the Texas court of criminal appeals says here is what the default provision means, that is the same thing for the purposes of this Court's review as if the legislature had written that in. Okay. As long as you're clear about that. Yes, Your Honor. So that's what we're challenging. I certainly agree if we were saying they got it wrong on their own terms, that would be Brooker-Feldenkorn, because we couldn't bring that claim. Breyer, I assume that this whole case focuses on paragraph 33 of your complaint. Is that right? There's been a lot of yes, but. I mean, I think there's been a lot of talk. I think there's been a lot of discussion about the allegations in the complaint, and particularly those paragraphs. I think that is maybe missing the larger point, which is this. As we said earlier, I think that the Federal rules permit complaints to be notice pleading, they permit amendment, they permit development of the issue. Look, 33 says the district attorney has violated my rights under the law by refusing to give me the DNA evidence. So make him do it. That's how I read 33. That's the relief that we're asking for, Your Honor. But not the relief. That's your complaint. You explain why you think it violates Federal law for him not to do it. You ask him to do it. Is there anything else to this case? I think there is the constitutional of the construction of the statute, because that is the basis on which the DA is. That's why you're entitled to the relief. All right. Yes. Is there anything else in the case that you want? No. We're not asking, no. I mean, I think if I'm not. You want the DNA evidence. That's correct. We don't, we don't, we're not asking this Court, the Federal district court, to release Mr. Skinner from custody. We're not asking them to accelerate the release date on his sentence, which there is none. We're not asking them to modify the status of his custody. All of those things which are at the core of habeas corpus, as this Court has interpreted that phrase, none of those are requested by us. You are asking. Well, what you say in the rest of paragraph 33 is that you want the biological evidence because by refusing to turn it over, he prevented you from gaining access to exculpatory evidence that could demonstrate he is not guilty of capital murder. That's right. Which is usually what we, what habeas corpus is for, to show you're not guilty of what you're in prison for. I think ordinarily, Your Honor, if that were our, if we, if we knew today that this evidence in fact was exculpatory, if they have already done the testing and they mail us a report and it says it's excluded your guy, then we wouldn't file a 1983 action. We would seek clemency or we would file a state habeas petition. We would do something that, where the Court would have the power to do that. You didn't agree with what the Chief Justice just said, did you? I noticed you were nodding your head. He said, and I got to dispute, but I mean, if you agree with that, I guess there's nothing left of this case, but I, but do you agree with that? I think that, no, Your Honor, I think that, I think that necessarily implies, as the Court interpreted that phrase in Dotson, means somewhere down the road you may come back to court and you may attempt to undo your custody, and that's not enough to put this case into habeas. The fact that you can't do that is not enough to put this case into habeas. Roberts, I understand, Mr. Shanmugam, but did I understand you to say that you, different cases where people are seeking the DNA evidence might come out differently under Heck? In other words, if it's the type of DNA evidence that conclusively establishes he's innocent, I mean, there are types like that. It's somebody else's, you know, DNA and that's what's necessary for the conviction. And there's others that, other types of DNA evidence that doesn't. I mean, it just happens to be on the scene of the crime and it turns out that it's not him that was in the room, even though he was somewhere else, and it might or might not mean he's innocent. In the former case, do you say that has to go under habeas, but in the latter it doesn't? I think when we're seeking access to evidence which has never been tested for testing, that can be brought under 1983. I think if the evidence has been tested and test results exist and are known and are exculpatory, that is a different case and that's probably habeas, because then it's the fact that the results are known and we know they're exculpatory, that does necessarily imply that there's something about the judgment that could be undone. Ginsburg. Mr. Owen, you're fitting your case into our decisions about the line between 1983 and habeas. But if nobody, if you didn't know anything about that and you look at what's presented here, in a civil case, it seems as though you are splitting your claim, that is, you want discovery, and if the discovery is favorable, then you ask for relief from the conviction. So it's the – it's quite unlike, I'm complaining about prison conditions here, the whole purpose of your seeking this discovery is so that you will be able if it turns out to be in your favor, to apply for habeas. Owen, I agree, Your Honor, that the whole purpose for seeking this evidence and pursuing this lawsuit is so that Mr. Skinner can have a meaningful opportunity to pursue the liberty interest he has under State law in trying to secure release based on innocence. That is correct. But I don't think that leads inexorably to the idea that this lawsuit, which is what the other one is. Ginsburg, I'm not sure if you agree that the discovery is the exclusive route, or could you have sought habeas relief? I think, Your Honor, that since our allegation is that the court of criminal appeals' decision denying us DNA testing, which is not the judgment that results in Mr. Skinner's custody, is the problem. That's the bad, invalid judgment from our legal theory. That could not have been brought in a habeas corpus proceeding, because I think that the relief that a Federal habeas court would have available to itself is limited to release, to accelerating release, or changing custody status. I don't think that there is power in the Federal habeas court under that statute to say, even though this will not affect the judgment as to which you are in custody, I'm going to act on this way in order for this person to do that or the other thing. I think that it wouldn't be available in habeas, Your Honor. Scalia, couldn't a habeas court say the conviction was invalid because of the failure to turn over this DNA evidence, which was relevant to the defense and which was unconstitutionally denied? Why wouldn't that be a basis for setting aside the conviction? Your Honor, this Court has never said, as I know the Court's aware of, I just want to make sure I'm clear on that, this Court's never said that it would be a constitutional basis for habeas relief if you could demonstrate that factually you were not guilty. So that's the claim that would have to be brought in such a Federal habeas. It's not presently available because this Court has never held that. And I think, given the constraints of the Federal habeas statute and the requirement of clearly established Federal law from this Court before a prisoner can get relief, that's a necessary prerequisite for us seeking that relief.  The problem, I think, with just going to Federal court and saying, give us discovery, I think it's the same problem as describing earlier with the Brady, with the Brady framework. If we knew today that the evidence was in the framework. Scalia, I'll tell you what the problem is, is Rooker-Feldman. That's why all of these things don't make much sense. I mean, it wouldn't happen because you had the opportunity to raise that in the State court, and now you're retrying what the State court decided. I think to the extent, Your Honor, that the question goes to the opportunity that we had to raise this issue in State court, that's a preclusion issue. And there may be preclusion issues back in the district court. We may have a dogfight over whether or not this claim should have been raised in State court. But that's not the Rooker-Feldman question, as I understand it. I think the Rooker-Feldman question is, what are we asking the Federal court to review? And what we're asking the Federal court to review is the court of criminal appeals' authoritative construction of the statute. But that would be an obstacle to habeas. Yes. Scalia, because in habeas, you'd be seeking to set aside the State court judgment. Okay? That's right. Habeas would be our only route, not 1883. That's why it's so unrealistic to analyze it that way, it seems to me. Well, Your Honor, I think I'm not sure I agree that it's unrealistic. I mean, I think that over time, the courts who are wrestling with this issue in the wake of Osborne will identify what aspects of a State's statute and construction of such statutes violate due process or don't. Why isn't it a correct formulation of your answer to Justice Scalia to say what we are seeking is a determination that the State court's judgment, State court's decision, State court's order was a violation of due process? If you say that, it's Rooker. That's a much simpler answer, Your Honor, and I'll adopt that answer. But that's Rooker. That's not — no, Your Honor, I think, again, that's where we started, and I'm not trying to bring us back full circle, but I think that our understanding of Rooker-Feldman is that that is not one of the things that the Rooker-Feldman doctrine prohibits. And, of course, this Court has emphasized in recent years in the Exxon case and elsewhere that lower courts have been reading Rooker-Feldman too broadly. Mr. Chief Justice, if I may reserve the remainder of my time. Roberts. Thank you, Mr. Owen. Mr. Coleman. Good morning, Chief Justice Roberts, and may it please the Court. To decide this case, the Court only needs to make two stops. First is paragraph 33 of Mr. Skinner's complaint. That complaint, that statement of his complaint clearly alleges against Ms. Skinner — Ms. Switzer herself that she has withheld, and the word he uses is exculpatory evidence — and violated his due process rights through that. Well, he says exculpatory evidence that could demonstrate that he's not guilty. There's a lot of exculpatory evidence that might imply — necessarily imply guilt, but there's a lot of exculpatory evidence that simply is helpful and doesn't mean it will demonstrate, and he says it could. There are two points in response to that, Chief Justice Roberts. The first is that this is the classic statement of a Brady claim. When you file a Brady claim, you don't know exactly what it is and whether it will definitely be exculpatory or not. You have learned information that makes you think that it would be, and you're able to— Substantive right in Brady was to have that material at trial, so that it is — that's the substantive constitutional right. Here, the substantive right that's been identified in Osborne is the liberty interest created by State law, and that only happens after the conviction. So it's not quite the same. It's not comparable. I'm not — I'm not saying that legally that there isn't some difference to be made from Osborne. Osborne rejected the substantive claim that you can bring a Brady claim. What I'm saying is that the language of the text of his complaint is a Brady allegation. And at page 19, footnote 6 of his own brief, he acknowledges that Brady claims have to be brought in habeas, and is left simply arguing that, one, that I can describe to the Court a different theory of my complaint, or that regardless of how I describe the complaint, I can break out the discovery aspects of that complaint and do it under 1983 and not in habeas. And part of the problem with that is that— Scalia, to win a Brady claim in habeas, wouldn't you have to show not just that it was withheld, but that it was indeed exculpatory and could have affected the outcome of the trial? No? Yes. But that claim and that showing is to be made, if at all, in habeas. And he has the opportunity to do that. Scalia, but he doesn't have to make that showing here. I mean, that's what he says distinguishes this case from habeas. In habeas, you would have to show that, indeed, it would justify a different outcome in the trial, whereas here he says, I don't have to show that, I just want the evidence. There's some ambiguity. I'm not sure I fully understand what you mean by here. He's alleged that that's what he's going to prove. When he — what he says in his brief and what he stands before the Court today and says, I'm going to show are different things. That's what he's going to do with it, but he doesn't — he doesn't say that I need to show that in order to be entitled to the relief I'm asking for, whereas he would have to say that in habeas. I disagree with respect to the relief that he is ultimately seeking. The question is, if you're saying that the 1983 suit is simply a retrying of the Article 64 proceeding, then I would have to concede that Article 64 does not require the same showing that a habeas claim. But part of the aspect of the case is that it's not a habeas claim, it's not a habeas claim. Alitos, aren't the exculpatory nature of the evidence and its materiality elements of the Brady claim itself? Well, as the Court and your concurring opinion in Osborne make clear, that exculpatory is really defined as demonstrating that you're innocent and that it's material. Breyer, I mean, that sounds like a — I would interpret his complaint as what he wants is the DNA. He thinks it's going to be exculpatory. He doesn't know that until he gets it. So look at Dotson. Dotson says that you go into habeas if winning, i.e., getting the DNA, would necessarily spell speedier release. End of the matter. I'm reading to you from Justice Scalia's concurrence, where he quotes my majority with great praise. Justice Scalia also makes the point at the end of his Dotson concurrence that the question — the real question is whether you could make out this type of claim or this — make out this type of proceeding in habeas. Ultimately, Pryser and Heck— No, not whether you could. What he's worried about, he can speak for himself, but as I read the concurrence, he was worried that if you win and take 1983 away, all kinds of things will be stuffed into habeas which don't belong there. And that may be a true and correct criticism, but whether it is or not, he has agreed — indeed, nine members or seven members of something of the Court agreed that the test I read to you is the test. And now, if that's the test, getting the DNA does not necessarily spell speedier release. It all depends on what the FDS — on what that DNA shows. So why isn't that? End of the matter. And because I disagree that the two words necessarily implies are, in fact, sort of the end of the battle and the end of the test. As Justice Ginsburg noted earlier in the argument, the Court has dealt with these issues in a variety of cases, most of them being prison disciplinary or parole-type proceedings. And in those cases, the Court is trying to define the outer bounds, ultimately, of what we're going to say Pryser and Heck require to be brought in habeas and what may be brought. A couple of boundaries on those rules are, first, Pryser and Heck may— Kagan. If you could answer Justice Breyer's question, because there are two phrases, necessarily imply the invalidity of a conviction and necessarily spell speedier release. And either you think that your case fits one of those or both of those standards, or you're asking us to abandon that standard. I don't think that that's true. I think that what the Court has always recognized, an Article 64 proceeding is a motion in the criminal case. If you look at the docket number on the motion, it is a motion in the criminal case. What necessarily implies has always been used for is defining the outer bounds of the rule in terms of prison disciplinary proceedings, parole, other things outside the criminal case itself. This is an attack on the criminal proceeding. This is a post-conviction motion in the criminal case itself. It's like a Rule 60. Breyer, in the conviction, in the court of conviction. It's not only in the court of conviction. It's under the docket number of the case. So that's a totally different area, because in Dotson, when I think what we did do, was go through every of these, every one of the prior cases. And they did involve, for the most part, the attack, as you say, on prison proceedings. And those cases where the attack on the proceeding would have restored good time credits there, it was shortening the length of confinement. In those cases where there was a general attack on procedures, but the procedure would simply be carried on better later, like parole, there wasn't. You suddenly focused me on a whole new set of areas. Where in the case law is this different rule, that the rule we just said has nothing to do with it if it's in the case? That's basically what you're arguing. What should I read to show that you're right on that? Well, I think Pryser and Heck both stand for the fundamental proposition that Congress set up habeas as a means of allowing collateral tax. Nowhere else does Congress specifically permit collateral tax on criminal proceedings. Then Pryser and Heck say what we allow from that is those things that may be brought in habeas should be brought in habeas, because the congressional intent behind the habeas statute is that we expect the safeguards that Congress has put in place to respect comedy and Federalism interests as well as other interests to be observed. But how could this be brought in habeas? If Mr. Skinner wants this evidence and we say you file a habeas petition, what would that habeas petition look like? Well, the habeas petition, we know it can be brought in habeas because, one, he's already brought it. He brought a habeas petition based on ineffective assistance of counsel that is, as a matter of argument, indistinguishable from the no-fault arguments that he's making here or the complaints against the no-fault aspect of the Article 64 proceeding. He can bring that. Many courts, this Court has never fully said that you can, but many courts do allow actual innocence-type claims to go forward. And so he can bring an ineffective assistance habeas. He can bring an actual innocence habeas. He can do discovery as part of that habeas. And when he does that, when he does that, Congress says you must respect those criminal proceedings, you must show deference, you must require exhaustion. Sotomayor, the habeas statute says, 2254a, a Federal court can entertain a habeas petition only on the ground that the Petitioner is in custody in violation of Federal law. Tell me how he can write a complaint that says the violation, due process violation of access to DNA means that this defendant is in custody in violation of Federal law, as opposed to having had a statutory right improperly denied him. Tell me, how does he write that complaint to get into habeas? Well, he's stood before the Court today and explained how he would write that complaint. And as I mentioned, Justice Sotomayor. Why is he in custody in violation of Federal law, because of the improper? Because he believed that he received ineffective assistance of counsel and that he can make. But that's not his claim here. His claim here is that he was denied DNA evidence improperly under State law, in violation of the Federal constitution. That's correct. And the last part of my answer to Justice Kagan, I think, is the answer to your question. And that is, if you make out either an ineffective assistance claim or an actual innocence-type claim, the congressional intent that you observe and show deference and exhaustion and all those things require that to be given to every step of the process. From the moment you file the complaint, through discovery, through every substantive aspect of that, what Mr. Skinner wants to do is say, I want to engage in artful pleading, and so I'm going to make a tax. Today they're on DNA evidence, tomorrow they may be a Brady claim, next week it may be a claim against procedures used in State habeas, but as long as I don't expressly ask that my custody be undone, I expect those claims to be allowed to go forward in 1983 without any of the protections of habeas, and then if it looks after a year that they're going pretty well, then I'll flip it over to habeas and go forward with my habeas. Breyer, I see your point, but I want to go back to trying to understand this. And we have the Dotson point, and you said, well, there are two other cases, Prisor and Heck. So what Dotson says about Prisor is that the plaintiff there wanted the shortening of his term of confinement. He wanted good time credits to be restored. And as we read it then, the shortening of the term of confinement is what made it proper to return habeas. But we added that if it hadn't been for that, if it hadn't attacked the duration of the physical confinement, it wouldn't be habeas, it would be 1983. In Heck, the same thing. They were establishing the basis for a damages claim that necessarily demonstrated the invalidity of the conviction. Where that was so, there would be habeas. Where that was not so, even if successful, it would not demonstrate the invalidity of any outstanding criminal judgment. The action should be allowed to proceed in 1983. So as we read those two cases, they stood for the exact principle I described. Now, you want perfectly fairly to say, but we didn't read them correctly, or we shouldn't have read them as exclusively, to say what I've just read. Fine. What is it in your opinion precisely that we should have the principle of distinguishing the one 1983 from habeas corpus if we were to abandon as an exclusive test what we said, and I just read you, in those three cases, Dotson, Prysor, Heck? What's your contrary approach? I think the approach is if these things may be properly made the subject of a habeas corpus claim, then congressional intent and the habeas statute require that it be brought in habeas. I think that responds to the principle of distinguishing the one 1983 from habeas. Ginsburg. You are asking for a modification of the Wilkinson-Dotson formula, because the formula is, I think, quite clear. It says, would necessarily demonstrate the invalidity of the conviction or the sentence. Would necessarily demonstrate. And the Petitioner is telling us, may not demonstrate it at all. May demonstrate that my client was, in fact, guilty. So wouldn't necessarily demonstrate the invalidity of the conviction. And I think to get to say that you should prevail, you would have to say, Court, you were wrong in using that formula, because here we have a Petitioner who says, I'm not claiming that what I'm seeking would demonstrate the invalidity of the conviction. I disagree with that, Justice Ginsburg. I don't think that we are saying that the Court is wrong. What I think I'm saying is that necessarily implied is not a magic words test that is the sort of complete and ultimate statement of the prize or heck rule, but rather you are asking for something in addition. You say, Court, don't just look at the words in Wilkinson v. Dotson. This is a different case, as I suggested originally. This does not involve parole. The ultimate destination in this case is the conviction in sentence. I think that that is correct, in the sense that if you look at Dotson, which was involved a specific claim for process, which is not what they are asking for. They are asking for actual relief, not process. But you look at those types of cases, whether it's heck, it's a civil case that went about attacking it, these cases on the periphery of what goes in and out of heck, the necessary implied language, I think, is a good descriptor for what is at the periphery. But when you attack the core of the criminal proceeding itself, what his rule is simply is an attempt to take the two words or the phrase from Dotson and turn it back on itself and say, says that under heck, I can attack motions in the criminal proceedings themselves, in the State habeas itself, as long as I stop short of asking for that ultimate relief. So heck said the case is about avoiding artful pleading, but now what he wants to turn it into is a rule that encourages artful pleading. Scalia, maybe we need, I mean, we've never had a case like this, and it's conceivable to me that we have to expand what we said in Heck and Prysor. I'm not sure, however, that what we ought to say is what you propose, that the test is whether it could be brought in habeas. You say it could be brought in habeas by claiming ineffective assistance of counsel. But you would lose that habeas. I mean, you can bring anything in habeas. I mean, you can file a habeas petition. I assume you mean you could possibly win in habeas. You couldn't win in habeas with this claim because you couldn't show that it would have affected the outcome. Isn't that so? Well, as you noted in your concurrence in Dotson, that the question is not whether you win, but whether you could. And the question is, if it's properly the subject of habeas, then Congress has demanded that all of the safeguards and protections for habeas be in place. And that doesn't quite give us the added formulation that some of the questions suggest we need if we're going to adhere to Dotson and still rule for you. There has to be some slightly different qualification. I'm not quite sure what it is. Well, I'm not sure exactly what you're angling for there. But at the end of the day, I think that there is also a misunderstanding about what Article 64 is. Skinner treats Article 64 as simply, I ask for evidence and I get evidence. And you denied me the DNA. What Article 64 actually is, it's a motion, as I mentioned, filed in the criminal case itself that says, Judge, I want a ruling that if this additional DNA evidence were known at the time of trial, then I probably would not have been convicted. And the process for obtaining that ruling is to make an initial threshold showing that suggests the materiality of the DNA evidence. If you get over that threshold, then you move on to testing and you get a hearing and an ultimate determination. But there are really only two results in Article 64. One is a ruling that you probably would not have been convicted. Or two, I reject your request for a ruling that you probably would not have been convicted. And that's what he got. It is a motion that goes to the core of the conviction itself. Breyer, but if you look, in the act itself, we set a 1983 action. Where it is, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment, a 1983 action should be allowed to proceed. Now, I take it what you're suggesting is we say that sentence is wrong or overstated, that there is another circumstance. Well, even though it will not demonstrate that the judgment was wrong, it still should not be allowed in 1983 if it is, quote, related to the criminal case itself. Something like that is what you're proposing. Or what is it? Say what it is, then, say what it is. What about where its only purpose is to demonstrate, is to be able to demonstrate the invalidity of the judgment? Well, ultimately, the only reason it can be brought is to demonstrate the invalidity of the judgment. It's part of a process where you hope to demonstrate. Can you bring in habeas a motion, let's say, to examine police files? You can bring a claim in habeas alleging, for instance, Brady. No, no, this isn't Brady. What you say is I have a right under criminal law here that everybody has that I can go back and take depositions of the you know, you have a reason for doing it. You want to take their depositions because you want to show that something wasn't followed. Can you do that in habeas? If you are alleging some underlying constitutional invalidity of your conviction and you need to discuss it. As a Federal lawyer, you say there's a Federal statute that you can't say yet whether it's invalid. We don't know. What we want is to get the information that will help us make that decision. We think there is a law that entitles us to that right. Can you bring that in habeas? You're right. The discovery provisions of habeas allow you to seek that as part of your habeas claim. And when you do that, all those safeguards and protections of habeas apply. So that means FOIA request, where your only purpose is to seek out the police files because you're hoping, just like you are in DNA testing, that those files will show exculpatory material, then FOIA requests have to be brought in habeas as well? I think FOIA is different. FOIA, you can ask for it, I can ask for it, Chief Justice Roberts can ask for it. Well, take the case, Mr. Coleman, I think there was one recently in the Fifth Circuit where a prisoner asked for appellate slip opinions. And the prisoner said, I want the slip opinions so I can write a better habeas petition. Does that also have to be brought as part of a habeas case, or can that be brought in 1983? I don't know the specifics of that claim, but I would tend to think if a person generally has access to slip opinions, then that would be fine.  No, he said he didn't have enough access to slip opinions and he needed more slip opinions in order to be able to obtain a quicker release from prison via habeas. I would say no. No, what? No, what? That that would not have to be brought as a habeas. But again, this is different. But why is that different? Excuse me? Why is that different? Both the prisoner is seeking a tool that he hopes will lead to a quicker release. Although it has no certainty at all of doing so. I think because there is no right specific to him. For instance, if I seek DNA evidence, it's because I want to attack my conviction and there is no other reason to do it. If I want slip opinions, it may be that I want to read them. It may be for the general public has access to slip opinions the same way the general public has access to slip opinions. The same example. I want to use the prison library 9 to 3 because that's when I work on my efforts to upset my conviction. Now, I mean, it's the same that Justice Kagan provided. What about that? That's just a prison condition. The Court has always said that those types of things can be brought in 1983. But what we are talking about here really is ultimately if you are convicted in one county but you are serving time in a different part of the State, you bring your habeas claim, and then at the same time you bring a 1983 suit, you ask for discovery and say, I don't want, and this could be DNA, it could be some other Brady materials, it could be an attack, you say, I want to litigate the first half of my claim out here without any of the protections of habeas, and then if it turns out well, I'm going to just move them over and use them in my habeas. That, without any of the protections, that is what Pryser and Heck ultimately were trying to stop. Heck said the only time we really allow these types of collateral attacks, and Heck cites Rooker for this very proposition. Kennedy. Kennedy. I was going to ask if you have a few moments to address the Rooker argument. What is your response to the Petitioner's counsel's explanation why there is no Rooker here? There is a way. When the Court said in Osborne, you should use these State statutes and you may, you might have a procedural due process, the Court was not saying we are going to create out of whole cloth an entirely new category of procedural due process. You do it like you do any other procedural due process. If you go into the system and you file, and again, litigation is different from an administrative procedure, which is what Dotson was about. You are in litigation and you are in court. And if somebody says, well, there is this prong that you can't meet and you think it violates due process, you have an obligation to raise it then, and then you have an opportunity, if the Court rules against you, to file a cert petition. And if you don't do that, what we do know is from this very limited area is that the one thing that you can't do is file a Federal 1983 lawsuit saying, I think that what the State court did is arbitrary and capricious. And so Skinner is asking you to create a 1983 lawsuit that is always Rooker-Feldman barred and always preclusion barred because you are asking the Court to declare that the State courts violated the constitutional rights in the way they went about it. And so he is asking you to create a category of 1983 suits that runs exactly contrary to Rooker-Feldman and exactly contrary to what Hecht said is this overriding interest in ensuring that these types of collateral attacks are brought, if at all, in habeas and not through generalized 1983 lawsuits that don't provide any of the protections that Congress has insisted by statute be applied in these types of suits. Ginsburg. So then can you give us your best modified statement of Wilkinson v. Dodson? I think you've been telling us that that formula fit that type of case, would necessarily demonstrate the invalidity of the conviction. It's given here that this evidence would not necessarily demonstrate the invalidity of the conviction. Nonetheless, you say it falls on the habeas side of the line. That does require you to ask for a modification of the Wilkinson v. Dodson formula, and I ask if you could say what that would be, what that precise modification would be. Well, first, I don't believe the Court has ever acknowledged the existence of a cause of action for discovery separate and apart from the merits of what you're seeking to do. The merits of what he's seeking to do is to attack his custody. That is something that can and should be brought in habeas, and the Court should not, for many reasons, create a cause of action whose sole purpose is to run counter to Rooker-Feldman and whose sole purpose is to avoid the protections of habeas. Again, this is not an expansion of habeas. It's simply a recognition that he has a claim that he can bring in habeas. It probably is a loser. We think it certainly would be a loser, but the question is, can he bring it, and if he can, it should be subject to these types of things. And at the end, when you recognize what he is trying to do, this is fundamentally a question or a he is seeking to invalidate his conviction and that it comfortably fits within the policy choices that the Court has made all the way. Roberts. So the Justice Ginsburg's question, I think, is an important one. Are you going to argue that you fit within, this case fits within necessarily implies, or is there another formulation that you think we should have? We think, given the nature of the Article 64 proceeding, which is itself an attack on the conviction, it is a request that the Court declare that the conviction is probably invalid. That because that is what he is attacking, he is saying the result of that is that we do fit within the necessarily implies, because any proper attack on an Article 64 ruling is an attack, but that within the broader context, if the Court feels a need to rule on these cases in criminal proceedings, then it should recognize it should be brought in habeas. Kennedy. But if I can have just one minute, then if you do not file an Article 64 in the State court at all and you just go to 1983, you are back under heck and you haven't given us a qualification that works under heck. Briefly. Very, very briefly. If the only claim you brought, you say I can never meet Article 64 because it says only applies to convictions after January 1st, 2000, I can't meet that, I think it's unconstitutional. You file an 1983 lawsuit, you say I think that provision is unconstitutional. That's really Dotson saying rule that that prong is unconstitutional, but let me go back and have process. That's Dotson. Roberts. Thank you, counsel. Not this case. Mr. Owen, take 5 minutes, or you have 5 minutes. Mr. Owen, I know I'm pushing you, but I really would like a clear statement of what the procedural due process violation that you're claiming occurred here is. Your Honor, our claim is that in its construction of the statute, the Texas Court of Criminal Appeals construed the statute to completely foreclose any prisoner who could have sought DNA testing prior to trial but did not from seeking testing under the postconviction statute. That is too broadly. So. Sotomayor, then let me follow this through. You're not attacking the constitutionality of Article 64 on its face, right? Or are you? Your Honor, this came up as we were preparing for our presentation, and I think there's – here's what I would like to say. We are not suggesting that Article 64, that there's no way to interpret Article 64 that the Court could have chosen to construe the statute that would always be unconstitutional in every case. That's what we're trying to say. Scalia, so what chose to construe it the way it construed it? You can't attack the way the State supreme court construed its statute. That's right, Your Honor. You're attacking the statute. Are you saying, and that's – this is where I've had difficulty, that by failing to acknowledge Petitioner's ineffective assistance of counsel claim, that that was the court's error? No, Your Honor. That was a good enough excuse to excuse the fact that he didn't do DNA testing at the time of trial, because that's what the statute says. You can't get it if it was present at the time, and – meaning if that actual test that you're seeking was available at the time of trial, or you don't prove that you couldn't have done it for a good reason. So what is it exactly that the court did in applying this that was unconstitutional? Your Honor, I think it's not the specific question to whether in our case they didn't consider our ineffective assistance of counsel arguments. It's that it made no provision for any exception to its rule. In other words, that it interpreted this as a blanket prescription on seeking testing for anybody who didn't seek it prior to trial. But wait a minute. That's what the statute says. The statute gives the conditions under which a Petitioner can seek DNA evidence, and it said you didn't meet those conditions. I'm still trying to figure out what you're arguing, I think, was the procedural due process violation in their application of those items. So are you challenging it facially? Are you challenging it as applied, but as applied how? Once the Court of Criminal Appeals construes the statute, that's what the statute means, and we're challenging that. If that's what the Court's, if that's what Your Honor's trying to do, it's facial. Sotomayor, what is it about what they said it means that's unconstitutional? That it is not, that it does not admit of any exceptions, and that it doesn't have any reference to the purposes of the statute, the reasoning that testing might not have been sought in a particular case, or the fact particularly that in our case, Mr. Skinner, at the time of his trial, this post-conviction DNA testing statute was still 6 years in the future. So that to the extent the Court of Criminal Appeals portrayed Mr. Skinner as making a choice, that's not accurate, because he didn't make a choice. Sotomayor, I'm not even sure what that argument ties to, because I thought what the Court said was this DNA testing was available then, you could have gotten it, strategically your trial attorney chose not to, and so that disqualifies you from seeking it now. I'm not quite sure what the date of the statute's passage, whether it makes any difference, because, because why? I've always felt it was intuitively especially unfair to accuse him of laying behind the log when there was no log to lie behind. But that's not our point in responding to your question, Your Honor. Our point is simply that we think that the exception that they crafted in construing the statute, or the statute as construed, sweeps too broadly, the exception sweeps too broadly. Now, the Court may not necessarily, we may not prevail on that eventually. We're going to litigate that, and I think that we will fight that out in the district court. But the question for this Court is we. Kagan, if I understand you correctly in how this understanding of the claim relates to the Rucker-Feldman doctrine, what you are saying is that the statute as construed was unconstitutional, and that that falls outside the bounds of the Rucker-Feldman doctrine. Yes, Your Honor. Whereas, if you were saying that the statute, that the application of the statute in this particular case was wrongful, that would not fall outside of the Rucker-Feldman doctrine. Is that right? That's right, Your Honor. And the comment that was made during Respondent's argument about, he said, we are challenging in his words the way the State court went about applying the law to Mr. Skinner. That's not what we're challenging. We're challenging the statute as construed. Thank you, counsel. The case is submitted.